IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DORA J. ROSENTHAL LIVESAY**,

        Plaintiff,

vs.                                                  No. CIV 00-784 JC/LCS

**WILLIAM A. HALTER,**
**Commissioner of Social Security**,[1]

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision filed October 28, 2000 (*Doc. 11*).  The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well-taken and recommends that it should be GRANTED.

## PROPOSED FINDINGS

### I. PROCEDURAL RECORD

1.      The Plaintiff's application for disability insurance benefits was first denied at the initial level on June 27, 1995, (R. at 59), and at the reconsideration level on October 2, 1995. (R.

---

[1] Pursuant to Fed. R. Civ. P. 25, William A. Halter, Acting Commissioner of Social Security, is substituted for Kenneth S. Apfel, Commissioner, as the Defendant in this action. Mr. Halter was nominated by President Bill Clinton on October 1, 1999, and confirmed by the United States Senate on November 10, 1999. He was the first confirmed Deputy Commissioner of Social Security.

at 74). Plaintiff appealed the denial of her claim by filing a Request for Hearing by Administrative Law Judge on December 1, 1995. (R. at 29). Administrative Law Judge Conner conducted a hearing on December 16, 1996, (R. at 13), and issued a decision on March 13, 1997 finding that the claimant was not disabled and thus denied disability benefits. (R. at 10). 3. The ALJ analyzed Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993).  The ALJ found that Livesay had not engaged in substantial gainful activity since the onset of her condition (Step 1); that she suffered from a severe impairment or combination of impairments consisting of chronic fatigue syndrome and depression (Step 2); and the severity of Livesay's impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599 (Step 3). (R. at 15-18).  Neither party disputes these findings.

  2. The ALJ then found that Livesay's was unable to do past relevant work. (Step 4). (R. at 23-24). Because of this finding, the ALJ proceeded to Step 5 of the sequential analysis. The ALJ finally concluded that Livesay was not disabled pursuant to grid rule §201.28 and that she could perform the full range of sedentary work. (R. at 24).

  3. Plaintiff filed a request for review on May 5, 1997. (R. at 8) The Appeals Council denied the request for review on June 11, 1998. (R. at 4). Ms. Livesay subsequently filed a civil action in the United States District Court for the District of New Mexico. (Doc. No. CIV 98-962 MV/RLP). After review of the Plaintiff's Motion to Remand, the Commissioner asked the Appeals Council to reconsider the issues, and thereafter entered into a stipulated remand order with the Plaintiff. *See* Order of Remand, Doc. No. CIV 98-962 MV/RLP. The Order stated that the ALJ "shall further consider the nonexertional limitations arising from Ms. Livesay's mental

impairment; [t]he ALJ shall take testimony from a vocational expert, if necessary; [t]he ALJ shall give the claimant the opportunity to submit updated medical evidence and to appear at a supplement hearing; and [t]he ALJ shall evaluate the claimant's credibility in accordance with appropriate regulatory criteria, including Social Security Ruling 96-7p." *Id*.

4.  Upon remand, the Plaintiff received a second hearing which was also conducted by Judge Conner on January 12, 1999 (R. 370). The ALJ entered her second decision on March 31, 2000 (R. 296) whereupon she found that the Plaintiff's assertions that she lacked the residual functional capacity necessary to perform at least a range of sedentary and light work activities were not credible and that she could perform a significant number of jobs at the light exertional level. (R. 299-301). The Plaintiff thereafter filed another complaint in federal court on May 31, 2000 and submitted a Motion to Reverse or in the Alternative Remand the ALJ decision.

## II. STANDARD OF REVIEW

5.  The standard of review in this Social Security appeal is whether the ALJ's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). "Substantial evidence is 'more than a mere scintilla. . . [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6.  In order to qualify for disability insurance benefits, a claimant must establish a

3

severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson v. Sullivan*, 987 F.2d at 1487.

      7.    At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

      8.    The record indicates that the Plaintiff first became ill in September of 1991. (R. 39). Some of her initial symptoms were dizziness, loss of equilibrium and body pains. (R. 39). Plaintiff alleged that she became unable to work due to her disabling condition on January 9, 1995 (R. 55). Ms. Livesay was born on June 8, 1952 and has a high school equivalent education. (R. 55). She has work experience as a translation technician and in video teleconferencing. (R. 275). Evaluations from various physicians indicated that she suffered from chronic fatigue syndrome as

4

well as symptoms including mouth ulcers, sinus, ear and esophageal problems, vertigo, weakness, and chest pain. (R. 196, 203, 205, 206-10, 213-16, 218, 220-22, 225, 229-38). In October of 1992, the Plaintiff was diagnosed with problems such as chronic fatigue and weakness by Dr. Martin Siegal. (R. 228).

9. Thereafter, the Plaintiff received numerous consultations from various doctors in 1995. Notably, on February 6, 1995, the Plaintiff was evaluated by Dr. Wesley C. Van Voorhis. (R. 184). Dr. Voorhis stated that it was his impression that Ms. Livesay suffered from "chronic fatigue syndrome. . . which has been rather sever in her case." (R. 184). Has also stated that he was concerned with the degree of vertigo she experienced and that she should consider seeing a neurologist in the future. (R. 184). He proscribed Prozac and Meclozine as alternatives to her previous medications due to side effects and her reactive depression. (R. 184). There was nothing within Dr. Voorhis' evaluation that indicated the Plaintiff was able to perform sedentary work or that her complaints of pain were exaggerated.

10. Beginning in December of 1995, the Plaintiff attended sessions with Buick Moomchi, M.S., Ph.D., a licensed clinical mental health therapist. (R. 279-86). Dr. Moomchi diagnosed Ms. Livesay with acute reaction to major stress with depressive symptoms which accumulated into severe adjustment reaction with mixed emotional features of anxiety and depression. (R. 279). He also stated within his reports that Ms. Livesay disclosed that she was concerned with the medication Dr. Hill-Mathews prescribed and that she thought she was having an adverse reaction to the Prozac. (R. 280-81).

11. In July of 1996, the Plaintiff was scene by Dr. Gerald Fredman for a psychiatric evaluation. (R. 155). Dr. Fredman diagnosed Ms. Livesay with major depressive episode which

was recurrent and severe. (R. 158). Within his report, he noted that the information she provided concerning her clinical history was consistent with the information in her records. (R. 157). His overall psychiatric diagnoses stated the following:

> The potential for [Ms. Livesay's] sustained work activity at this time would be poor. Because of the depressive symptoms . . . it would be difficult for her to tolerate the inevitable stresses and pressures of a job setting. She would have difficulties performing one- or two-step repetitive tasks at a competitive rate. In addition, the severe depression would make it difficult for her to interact in a consistent way with coworkers and superiors. (R. 158).

12.     As of December of 1996, Ms. Livesay ceased seeking treatment from physicians and started to use alternative forms of medicine. (R. 42). She started seeing Gary L. Moses, N.D, a naturopath specializing in nutrition. As stated within his evaluations Mr. Moses determined that Ms. Livesay suffered from "localized weakness, poor sleeping, poor balance, sudden energy drop, fatigue, cravings, strong thirst, facial pain, earaches, recurrent sore throat, swelling of hands. . . ." (R. 332).

13.     Ms. Livesay testified that her depression started when she was first diagnosed with chronic fatigue syndrome and that her depression turned into sadness, anxiety, loneliness, and a sense of helplessness. (R. 378-79). She also stated that she has had a hard time falling asleep, and wakes up to three times a night, that she suffers from memory loss and a loss of concentration( R. 380-81). At both hearings, Ms. Livesay answer that she could no longer afford psychological counseling. (R. 51 and 386).

## III. DISCUSSION

14.     Plaintiff raises the following arguments in support of her Motion to Reverse or in the Alternative, to Remand for a Rehearing.  First, Plaintiff contends that the ALJ incorrectly

weighed Plaintiff's pain and credibility. Second, Plaintiff argues that the ALJ erred in assessing Plaintiff's residual functional capacity. Third, the Plaintiff argues that the ALJ limited testimony at the second Administrative Hearing and lastly, that the ALJ improperly ignored evidence favorable to Plaintiff.

15.     The first issue the Court will assess is Plaintiff's contention that the ALJ erred in assessing her credibility.  Specifically, Plaintiff asserts that the ALJ failed to clearly state why she disbelieved Ms. Livesay's complaints of pain, fatigue, and inability to work. The Defendant asserts that "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The Defendant also argues that the ALJ was proper in relying on the Plaintiff's lack and refusal of medical treatment, and the fact that Ms. Livesay uses non-prescribed medication.

16.     It is not this Court's task to make an independent judgment as to the credibility of the claimant's testimony regarding her subjective physical symptoms. "[T]he determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Huston v. Bowen*, 838 F.2d 1125, 1131, 1133 (footnote omitted)  (10th Cir. 1988), (citing *Kepler*, 68 F.3d at 391).  The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. *Kepler*, 68 F.3d at 391 (internal quotations omitted).  Failure to make credibility findings regarding critical testimony "fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to

7

support his conclusion that claimant is not under a disability." *Id.* (internal quotations omitted). The ALJ must make an express credibility determination if she disbelieves a claimant's pain testimony. *See Schroeter v. Sullivan*, 977 F.2d 391, 394-95 (7th Cir. 1992).

17. In addition to discussing the evidence supporting the ALJ's decision regarding credibility, the ALJ must also discuss the uncontroverted evidence upon which she chooses not to rely, as well as the significantly probative evidence which she rejects. *See Casias v. Sec'y of Health & Hum. Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991); *see also Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (ALJ must give legitimate reasons to reject treating physician's opinion). The ALJ cannot ignore other objective evidence favoring the plaintiff simply because she has already found plaintiff not credible. *Id.* Ignoring such evidence violates both her duty of inquiry, *Henrie v. U.S. Dept. of Health & Hum. Serv.*, 13 F.3d 359, 361 (10th Cir. 1993), and the prohibition on picking through the record for isolated bits of evidence. *Id.*

18. The ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence." *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston*, 838 F.2d at 1132 and n. 7).

19. The ALJ's duty was also governed by the Order remanding the case which specifically stated that the ALJ must refer to Social Security Ruling 96-7p. Ruling 96-7p states that "credibility of an individual's statements about pain or other symptoms and their functional effects is the degree

8

to which the statements can be believed and accepted as true." SSR 96-7p. The Ruling also states that the determination of credibility "can not be based on an intangible or intuitive notion about the individual's credibility . . . [but] must be grounded in the evidence and articulated in the determination or decision." *Id*. Although the ALJ's statement that she need not totally accept or totally reject the individual's statements is in line with the language in the Ruling, the ALJ still was required to "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about credibility." *Id.*

20.     After reviewing the ALJ's findings, I find that the ALJ's credibility assessment is in error for three reasons. First, it is clear that she did not rely on SSR 96-7p because she failed to base her credibility determination on any of the testimonial evidence given by Ms. Livesay.[2] The ALJ's decision only cursorily referred to the testimonial evidence given by the Plaintiff. The ALJ stated that the "claimant's own testimonial admissions indicate an ability on her part to perform a range of sedentary and light exertional work." (R. at 300). However, this conclusory statement did not refer to any specific statement in Ms. Livesay's testimony. Indeed, an examination of the record reveals none. The only other reference to Ms. Livesay's testimony was that "the claimant herself said at the hearing that she is no longer being treated for her depression." (R. at 300). The ALJ failed to mention Ms. Livesay's testimony regarding how traditional treatment no longer helped her and that she had started taking alternative forms of treatment for her chronic fatigue in order to find relief. Nor did she evaluate the effectiveness of the medication the Plaintiff was initially taking or her attempts to find

---

[2]     Although the ALJ cited to SSR 96-7 within her opinion, her analysis clearly does not rely on the policy stated with the ruling.

alternative forms of relief.[3] The only other evidence the ALJ points to in order to discredit the Plaintiff's credibility was the fact that a naturopath, Mr. Moses, was not an acceptable medical source for purposes of establishing the existence of a medically determinable impairment. (R. at 298 and 300).

21. Second, the ALJ failed to properly apply the *Hargis/Huston* factors. The ALJ must investigate all avenues presented that relate to subjective complaints, including nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. *See* SSR-88-13; *see also Hargis*, 945 F.2d at 1489. After comparing these factors with the ALJ's findings, I find that there was an insufficient basis to determine credibility. Specifically, the ALJ's findings were not sufficiently tied to relevant and specific subjective testimony, the ALJ failed to discuss the Plaintiff's initial attempts to receive medical treatment and her attempts to find alternative forms of relief, and the ALJ failed to point out the adverse affect of medications the Plaintiff experienced. Therefore, the ALJ failed to adequately employ the well defined and widely used *Hargis/Huston* factors in assessing the Plaintiff's credibility. *See Thompson*, 987 F.2d at 1489.

22. Lastly, the ALJ supported her decision with conclusory statements made by medical consultants while failing to discuss any uncontroverted evidence or significantly probative evidence found in the record. The conclusory statements that the ALJ did rely on were the opinions of two medical consultants. One medical consultant stated "that the claimant has a capacity for

---

[3] The factors as stated in the *Hargis* case actually state that the ALJ should consider are "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or **nonmedical**) to obtain relief . . ." *Hargis*, 945 F.2d at 1489. Therefore, the ALJ's reliance on the fact that Ms. Livesay relied on nonmedical treatment verses medical treatment is unconvincing.

medium exertional work" while the other "assessed the claimant's ability to perform mental work activities." (R. 300). The ALJ then concluded that the claimant's testimony indicated that she had the ability to perform a range of sedentary and light exertional work and that there was no evidence refuting the opinions expressed by the medical consultants. (R. 300). Not only can I not find any reference in the claimant's testimony to substantiate these conclusions, the record is fraught with medical evidence refuting the medical consultants' opinion and thus corroborating the Plaintiff's complaint of fatigue. For example, Dr. VanVoorhis stated within his evaluation that his impression was that "the patient has chronic fatigue syndrome, which is rather severe in her case." (R. 184). Also, Dr. Fredman, one of the testifying medical consultants, stated that "the potential for [Ms. Livesay's] sustained work activity at this time would be poor. Because of the depressive symptoms . . . it would be difficult for her to tolerate the inevitable stresses and pressures of a job setting." (R. 158). Another example within the record is an evaluation by Dr. Moomchi. He diagnosed Ms. Livesay with acute reaction to major stress with depressive symptoms which accumulated into severe adjustment reaction with mixed emotional features of anxiety and depression. (R. 279). The ALJ failed to state why she excluded from her determination this documented medical evidence which supports Ms. Livesay's subjective testimony regrading pain.

23.     In conclusion, the ALJ was required by the remand Order to substantiate her findings with the subjective testimony of the Plaintiff, she was required to support her credibility assessment with sufficient evidence pursuant to the *Hargis/Huston* factors, and she was required to state why she did not take into account the probative evidence supporting the Plaintiff's subjective testimony. *See also Casias*, 933 F. 2d at 801. The ALJ failed in all of these respects. She instead centered her credibility assessment around two medical consultants, one of whom made evaluations

of the claimant that were in fact probative of her subjective complaints, and the fact that her current care taker is a nutritionist and not a physician. (R. 300). When evaluating the evidence the ALJ used to support her conclusion, it is evident that her credibility is not supported by substantial evidence. *See Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). It is also clear that the ALJ's assessment completely circumvents the direction given in the remand Order to follow SSR 96-7 and take into account the Plaintiff's subjective testimony. Therefore, the Court finds that Ms. Livesay's credibility assessment was in error.

24. Plaintiff next argues that the ALJ erred in assessing Plaintiff's residual functional capacity. Specifically, the Plaintiff asserts that the ALJ failed to tie the RFC finding to sufficient evidence, that she improperly tied Ms. Livesay's credibility assessment to the RFC determination, and that the ALJ placed too much importance on the vocational expert's testimony while ignoring Ms. Livesay's testimony regarding nonexertional limitations. The Defendant asserts that the ALJ correctly relied on the vocational expert who listed specific examples of job availabilities as well as the medical consultants who stated that the Plaintiff could perform medium work and sedentary and light jobs. The Defendant also focuses on the fact that the opinion of the medical consultant was not refuted and that the claimant herself testified she was no longer being treated for her depression.

25. After a claimant has established at step four that he or she cannot return to his or her past relevant work, the burden shifts to the Commissioner to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the economy. *See Hargis*, 945 F.2d at 1489. Residual functional capacity is defined by the regulations as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a); *see also Davidson v. Sec'y of HHS*, 912 F.2d

1246, 1253 (10th Cir.1990). The ALJ's decision that a claimant retains RFC to do other work must be based on substantial evidence as are most ALJ determinations. *See Gossett*, 862 F.2d at 804. In determining a claimant's limitations, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The ALJ must also consider "all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence." SSR 96-7p. Furthermore, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. SSR-95-5p.

26.     After reviewing the ALJ's decision, I find the ALJ's determination regarding Ms. Livesay's RFC factor is in error for at least two reasons. First, the ALJ failed to properly support her RFC finding with sufficient evidence. As stated earlier within the standard of review, "substantial evidence is more than a mere scintilla. . . [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Thompson*, 987 F.2d at 1487. The ALJ's opinion states that "[the] vocational expert opinion at the hearing confirms that there are and have been jobs existing in the regional or national economies which the claimant could perform. Examples of those jobs include those of a stone setter and jewelry preparer. In addition, the expert related an incidence of these jobs - nationally and locally for each job - which I find significant in number." (R. 301). This

is the extent to the RFC analysis in the ALJ's opinion. There is no other tie to the record that supports her decision.

27.     The ALJ must make a determination based on substantial evidence that a reasonable mind might accept as adequate to support a conclusion. *See Thompson*, 987 F.2d at 1487. Although the ALJ's RFC determination specifically referred to the vocational expert's opinion, it seemed as if two medical consultant opinions also influenced the ALJ's determination. One of the medical consultants, Dr. Nickerson, never even evaluated Ms. Livesay and thus made his RFC determination in a "fill-in-the-blank" survey. (R. 67). The other medical consultant, Dr. Fredman, personally evaluated Ms. Livesay and prepared a full evaluation. Specifically, Dr. Fredman stated that "it would be difficult for [Ms. Livesay] to tolerate the inevitable stresses and pressures of a job setting."(R. 158). However, this portion of Dr. Fredman's evaluation was not discussed within the ALJ's determination. The ALJ's determination merely states that one medical consultant "previously determined that the claimant has a capacity for medium exertional work while a second [medical consultant] assessed the claimant's ability to perform mental work activities." (R. 300).

28.     As stated earlier, there is sufficient evidence in the record that corroborated the Plaintiff's attestation of pain, fatigue and inability to work. (R. 184-84, 205, 208, 216, 227, 231, 233). In addition to Dr. Fredman's evaluation, Dr. Voorhis stated within his evaluation that Ms. Livesay has "chronic fatigue syndrome. . . which has been rather sever in her case." (R. 184). All of this objective medical evidence, coupled with Ms. Livesay's testimony, reveals the possibility that she could no longer work to the functional capacity revealed in the ALJ's opinion. Because the ALJ failed to considered to entire record in her determination for RFC, her determination was not adequately

supported by substantial evidence.[4]

29.     Secondly, the ALJ improperly relied on the vocational expert's testimony because in my view, the ALJ did not ask the appropriate questions. Not only was the ALJ's analysis not properly supported with evidence from the record, the evidence the ALJ most notably relied on was flawed. The ALJ failed to ask relevant questions of the vocational expert. A vocational expert's testimony can provide substantial evidence to support the ALJ's findings of residual functional capacity only if hypothetical questions presented to the vocational expert adequately reflect the state of the record. *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). "Hypothetical question[s] used to produce evidence of suitable jobs for claimant seeking social security disability benefits must fairly reflect abilities and impairments of the claimant as evidenced in the record; if a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). Therefore, as in this case, when there are both exertional and nonexertional impairments that diminish a claimant's residual functional capacity, the ALJ "must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Cruse v. U.S. Dept. of Health & Hum. Serv.*, 49 F.3d 614, 619 (10th Cir. 1995).

30.     The transcript reveals that the ALJ asked the vocational expert "if this person, an individual, experienced a decreased level of concentration and memory, how would it erode this

---

[4] The Defendant's argument, in essence, asserts that the ALJ properly relied on the medical consultants' opinions because of the unreliability of Mr. Moses' assessment since naturopaths are not considered "Acceptable medical sources." (Def.'s Brief pg. 6). However, the ALJ's opinion fails to review other acceptable medical sources confirming Ms. Livesay's condition, specifically, the opinions of Dr. Voorhis and Dr. Fredman.

vocational base that you set forth here?" (R. 390). The vocational expert answered that if the problems "exist[ed] most of the time, it would eliminate all jobs." (R. 390). The ALJ then responded by re-asking the question emphasizing on a "diminished" level of concentration. The vocational expert then stated that the listed jobs would include jewelry preparer, photo finish worker, the stone setter, and the clerical sorter. (R. 391). The ALJ failed to ask the vocational expert questions relating to the Plaintiff's nonexertional limitations of chronic fatigue and weakness. Since the ALJ relied on the hypothetical questions posed to the vocational expert, the questions should have reflected "all of the claimant's impairments, limitations, and restrictions" *Baker*, 159 F.3d at 1144. Therefore, after reviewing once again the Order to Remand, the ALJ's decision and the parties arguments, the Court finds that ALJ's RFC assessment was also in error.

31.    The Tenth Circuit has held that the Court has discretion in remanding cases or awarding benefits. *See Ragland v. Shalala*, 992 F. 2d 1056, 1060 (10th Cir. 1993). Benefits have been awarded when the Commissioner patently failed to satisfy the burden of proof at step five, and has long delayed proceedings. *See Taylor v. Callahan*, 969 F. Supp. 664, 673 (D. Kan. 1997)(citing Ragland, 992 F. 2d at 1060). Benefits have also been awarded when substantial evidence required a finding of disability. *Id.* (citing *Talbot v. Heckler*, 814 F. 2d 1456, 1465 (10th Cir. 1987)). Additionally, reversal is warranted when the ALJ failed to apply correct legal tests. *See Salas v. Chater*, 950 F. Supp. 316, 320 (D. N. M. 1996)(citing *Baca v. Department of Health and Human Services*, 5 F. 3d 476, 478 (10th Cir. 1993); *Casias v. Secretary of Health and Human Services*, 933 F. 2d 799, 801 (10th Cir. 1991)).

32.    When the record does not substantially support a finding of "disabled" any more than it supports a finding of "not disabled," however, the Tenth Circuit has remanded for further

proceedings. *See Taylor*, 969 F. Supp. at 673 (quoting *Thompson v. Sullivan*, 987 F. 2d 1482, 1492 (10th Cir. 1993)). A remand is appropriate where an ALJ made no findings as to nonexertional impairments or where minimal findings were not supported by adequate evaluation of the evidence in the record. *Id.* (quoting *Talbot*, 814 F. 2d at 1465 n. 6). In sum, to determine whether a matter should be remanded or benefits awarded, one must ask if additional fact finding would serve an [sic] useful purpose. Id.

33.    In this case, the Plaintiff first applied for benefits five years ago. The ALJ found she was not disabled thus precluding benefits after an evidentiary hearing in March of 1997. Subsequently, the parties agreed to remand the case for further findings to be made consistent with a District Judge's order. After the second hearing in March of 2000, the Plaintiff was again found to be not disabled. Since I have determined that the ALJ's evaluation and analysis were in error in finding the Plaintiff was not credible and that the Plaintiff had a residual functional capacity for sedentary work, I believe that reversal and an award of benefits is appropriate in this case. This case should not be remanded for a second time.

## RECOMMENDED DISPOSITION

I recommend granting the Plaintiffs Motion to Reverse or Remand for Administrative Agency Decision and immediately awarding disability insurance benefits to the Plaintiff. Timely objections to the foregoing may be made pursuant to 28 U. S. C. §636( b)( 1)( C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636( b)( 1)( C), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections

are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**